**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                          :
KATHLEEN COMBS,                           :        CIVIL ACTION
                          Plaintiff,      :
                                          :
        v.                                :        NO. 10-1318
                                          :
MICHAEL J. ASTRUE,                        :
COMMISSIONER OF THE SOCIAL SECURITY       :
ADMINISTRATION,                           :
                          Defendant.      :
_____       :

Henry S. Perkin, M.J.                                      December 16, 2011

## REPORT AND RECOMMENDATION

      Plaintiff, Kathleen Combs ("Plaintiff"), brings this action under 42 U.S.C. §

1383(c)(3), which incorporates 42 U.S.C. § 405(g) by reference, to review the final decision of

the Commissioner of Social Security ("Defendant"), denying her claim for disability insurance

benefits ("DIB") provided under Title II of the Social Security Act ("the Act").  42 U.S.C. §§

401-433.  Subject matter jurisdiction is based upon section 205(g) of the Act.  42 U.S.C. §

405(g).  Presently before this Court is the Plaintiff's Request for Review and Brief in Support

thereof and the Defendant's Response.  For the reasons that follow, it is recommended that the

case should be remanded.

## I.  PROCEDURAL HISTORY.

      Plaintiff filed an application for benefits under Title II for DIB on August 23,

2007, alleging disability since March 15, 2002, due to fibromyalgia,[1] pulmonary stenosis, chronic

---

[1]     Fibromyalgia is a condition in which symptoms include pain, fatigue, disturbed sleep, stiffness, and
multiple tender spots on the body.  Its causes are unknown and it is currently incurable.  Its symptoms are entirely
subjective, and there are no laboratory tests which can gauge the level of severity of the condition.  Wilson v. Apfel,
No. Civ. A. 98-6511, 1999 WL 993723 (E.D. Pa. Oct. 19, 1999)(citing Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.

hives, back pain, tachycardia and depression.[2]  (A.R. 11.)[3]  Plaintiff's application was denied at

the initial level on January 3, 2008.  (A.R. 11.)  On February 19, 2008, Plaintiff filed a timely

request for a hearing before an Administrative Law Judge ("ALJ").  (A.R. 53-54.)  A hearing was

held by ALJ Janice C. Volkman on May 1, 2009.  (Id. at 18-42.)  Appearing at the hearing and

offering testimony were Plaintiff, who was represented by counsel, and vocational expert Beth

Kelley.  (A.R. 21-39, 40-42.)  Having considered evidence of Plaintiff's impairments, ALJ

Volkman issued an unfavorable decision on May 28, 2009 in which she found that Plaintiff was

not under a disability from March 15, 2002, the alleged onset date, through December 31, 2007,

the date last insured,[4] and Plaintiff retained the residual functional capacity to perform a

significant number of low-stress, simple, sit/stand option sedentary jobs nationwide.  (Id. at 16-

17.)  Plaintiff timely requested review of the ALJ's decision, which was denied by the Appeals

Council on January 27, 2010.  Thus, the ALJ's decision of May 28, 2009 became the final

decision of the agency.

Plaintiff filed this civil action seeking judicial review of the Commissioner's

decision on March 26, 2010.  The matter was referred by the Honorable Legrome D. Davis for

preparation of a Report and Recommendation.

---

1996)).

[2]      Plaintiff had filed prior applications for DIB on July 14, 2004, November 8, 2005 and July 9, 2007, which were denied, but no request for hearing was filed on any of the denied claims.

[3]      All citations to the Administrative Record are cited using the abbreviation "A.R."

[4]      A claimant is required to prove that she became disabled prior to the expiration of her insured status.  42 U.S.C. § 423(a)(1); 20 C.F.R. §§ 404.130, 404.131(a); Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).  "Under Title II . . . [w]hen the person last met the insured status requirement before the date of adjudication, the oldest age to be considered is the person's age at the date last insured."  Social Security Ruling ("SSR") 83-10.

II.    <u>FACTS</u>.

Plaintiff, born on November 9, 1974, was thirty-four years old at the time of the ALJ's May 28, 2009 decision.[5]  (A.R. 16.)  Plaintiff is a high school graduate and completed two years of college and she resides with her husband and their six year old daughter.  (A.R. 21, 22.)  Plaintiff last worked in 2002 as an administrative assistant.  (<u>Id.</u> at 22.)

III.    <u>LEGAL STANDARD.</u>

The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Commissioner's final decision.  Any findings of fact made by the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision.  <u>Richardson v. Perales</u>, 402 U.S. 389, 407 (1971)(quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  <u>See also</u> <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992), <u>cert. denied</u>, 113 S.Ct. 1294 (1993).  The ALJ must consider all relevant evidence in the record and provide some indication of the evidence he rejected and why he rejected it.  <u>See</u> <u>Adorno v. Shalala</u>, 40 F.3d 43, 48 (3d Cir. 1994); <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  When determining whether the ALJ's decision is supported by substantial evidence, the court may look to any evidence in the record, regardless of whether the ALJ cites to it in his decision.  <u>Hook v. Bowen</u>, 677 F. Supp. 305, 306 (M.D. Pa. 1988); <u>Esposito v. Apfel</u>, 66

---

[5]    Because Plaintiff qualifies as a "younger person" under the regulations, her age is not considered a significant impediment to adapting to new work situations.  20 C.F.R. § 416.963(b)(2000).  The Court must "cautiously scrutinize the employment prospects of so young an individual before placing h[er] on the disability rolls."  <u>Lockley v. Barnhart</u>, No. 05-5197, 2006 U.S. Dist. LEXIS 29722, at *2 n.1 (E.D. Pa. May 16, 2006)(Baylson, J.)(quoting <u>McLamore v. Weinberger</u>, 530 F.2d 572, 574 (4th Cir. 1976)).

Soc.Sec.Rep.Ser. 217, 2000 WL 218119, at *6 (E.D. Pa. Feb. 24, 2000).  Thus, the issue before

this Court is whether the Commissioner's final decision of "not disabled" should be sustained as

being supported by substantial evidence.  Moreover, apart from the substantial evidence inquiry,

a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a

claim of disability.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

　　　　　To prove disability, a claimant must demonstrate that there is some "medically

determinable basis for an impairment that prevents [him] from engaging in any 'substantial

gainful activity' for a statutory twelve-month period."  42 U.S.C. § 423(d)(1).  Each case is

evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows: (1) if the claimant is
> currently engaged in substantial gainful employment, she will be
> found not disabled; (2) if the claimant does not suffer from a
> "severe impairment," she will be found not disabled; (3) if a severe
> impairment meets or equals a listed impairment in 20 C.F.R. Part
> 404, Subpart P, Appendix 1 and has lasted or is expected to last
> continually for at least twelve months, then the claimant will be
> found disabled; (4) if the severe impairment does not meet prong
> (3), the Commissioner considers the claimant's residual functional
> capacity ("RFC") to determine whether she can perform work she
> has done in the past despite the severe impairment - if she can, she
> will be found not disabled; and (5) if the claimant cannot perform
> her past work, the Commissioner will consider the claimant's RFC,
> age, education, and past work experience to determine whether she
> can perform other work which exists in the national economy.  See
> id. § 404.1520(b)-(f).

Schaudeck v. Comm'r of Social Sec. Admin., 181 F.3d 429, 431-32 (3d Cir. 1999).

## IV.  ALJ DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

　　　　　According to Plaintiff's application for benefits, her alleged impairment involves

an inability to work since March 15, 2002, due to fibromyalgia, pulmonary stenosis, chronic

4

hives, back pain, tachycardia and depression. (A.R. 11.) The ALJ, however, proceeded through the sequential evaluation process and determined that Plaintiff was not disabled as a result of her impairments.[6] The ALJ found that Plaintiff retained the residual functional capacity ("RFC")[7] to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except she required a sit/stand option and low stress, simple work.[8] Based on this RFC and considering Plaintiff's vocational profile and the VE's testimony, the ALJ concluded that Plaintiff could make a vocational adjustment to other work existing in significant numbers in the national economy. (A.R. 16-17.)

In her Request for Review, Plaintiff asserts six claims of error, specifically: (1) the ALJ's finding that the Plaintiff did not have a severe mental impairment was erroneous; (2) the ALJ's failure to consider all the medical opinions contained in the record was erroneous; (3) the ALJ's failure to properly consider Plaintiff's impairments in combination was erroneous; (4) the ALJ's failure to make an adequate credibility determination was erroneous; (5) the ALJ's failure

---

[6] The ALJ proceeded through all of the steps, finding that: (1) Plaintiff had not been engaged in substantial gainful activity from March 15, 2002, the alleged onset date through her last insured date, December 31, 2007; (2) Plaintiff's fibromyalgia, degenerative disc disease and obesity are severe impairments; (3) through December 31, 2007, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) through December 31, 2007, Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except she required a sit/stand option and low stress simple work. The ALJ concluded that although Plaintiff was unable to perform any past relevant work, she was still functionally capable of making a vocational adjustment to work that existed in significant numbers in the national economy due to her age, education, work experience, and residual functional capacity. The ALJ found that transferability of job skills was not an issue because the Medical-Vocational Rules as a framework supported a finding of "not disabled" whether or not Plaintiff had transferable job skills. Thus, the ALJ found Plaintiff was not disabled at any time from March 15, 2002, her alleged onset date, through December 31, 2007, the date she was last insured. (A.R. 13-17.)

[7] RFC is the most that an individual can do despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a).

[8] Sedentary work involves lifting no more than ten (10) pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a). Sedentary work is primarily performed in a seated position and involves occasional walking and standing. Id.; Social Security Ruling ("SSR") 83-10.

to pose a complete hypothetical to the VE was erroneous; and (6) the ALJ erred in drawing conclusions from only limited portions of the VE's testimony.  The issue before this Court, however, is whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence.

## V.  DISCUSSION.

### A.  Whether the ALJ Erred in Failing to Consider All of the Medical Opinions Contained in the Record.

Plaintiff claims that the ALJ failed to consider all of the medical opinions in the record, specifically that of Jeffrey Bryer, Ed.D., who diagnosed Plaintiff with major depression. According to the Plaintiff, the ALJ's decision is devoid of any mention of Dr. Bryer's evaluation and therefore it is impossible to know if the ALJ "considered and rejected [it], considered and discounted [it], or failed to consider [it] at all."  Pl.'s Mot., pp. 7-8 (quoting Fargnoli v. Massanari, 247 F.3d 34, 44 (3d Cir. 2001)).  The following is the extent of the ALJ's decision regarding Plaintiff's mental issues:

> A diagnosis of major depressive disorder is documented, but the claimant's past treatment was very minimal and she is not in current treatment (Exhibit 8F, 10F). Further, her GAF of 62 to 70 establishes that she has some difficulty in social and/or occupational functioning but generally functions well (Exhibit 6F).
>
> . . . .
>
> She has had no mental health treatment for the past year and a half.

(A.R. 14, 15.)   On December 13, 2007, Plaintiff underwent a Consultative Examination with Dr. Bryer for the Bureau of Disability Determination, which is Exhibit 10F in the Administrative Record.  (A.R. 367-74.)  Dr. Breyer diagnosed Plaintiff with:

> Major Depression, moderate to severe in intensity, recurrent nature.  While she is

being treated with an antidepressant, her ongoing sleep difficulties, low energy, short-term memory impairment, and mood state, all suggest that her treatment is not optimally effective for her. She might benefit from either a review of the dosage of her medication and/or transitioning of her mental health care to a psychiatrist and perhaps a psychologist.

(A.R. 370.) Dr. Breyer opined that Plaintiff's "psychosocial stressors are moderate to high given the details of her life circumstances" and assigned her a Global Assessment of Functioning ("GAF") score of 50.[9] (Id. at 371.) Dr. Bryer also found that Plaintiff had marked difficulties in her ability to understand, remember and carry out detailed instructions and in her ability to respond appropriately to changes in a routine work setting. (A.R. 373.) He opined that Plaintiff experienced moderate restrictions in her ability to understand and remember short, simple instructions, make judgments on work related decisions, interact appropriately with coworkers and respond appropriately to changes in a routine work setting. (Id.) Dr. Bryer found that Plaintiff would be expected to experience mild restrictions in her ability to carry out short, simple instructions, interact appropriately with the public and interact appropriately with supervisors. (Id.)

The Defendant responds to Plaintiff's argument by stating the following:

Plaintiff avers that the ALJ failed to consider Dr. Bryer's opinion (Pl.'s Br. at 7-8); however, the ALJ specifically referenced Dr. Bryer's report, which is Exhibit 10F, in her decision (Tr. 14, 367-74). As mentioned already, the ALJ did not dispute that Plaintiff had a major depressive disorder, as Dr. Bryer diagnosed (Tr. 14, 370). Plaintiff selectively cites to Dr. Bryer's report in her brief (Pl.'s Br. at 6-8). Plaintiff believes the ALJ erred because the ALJ did not specifically mention Dr. Bryer's GAF rating of 50 (Pl.'s Br. at 8).

Def.'s Br., pp. 13-14. We note that the ALJ's decision refers to Dr. Bryer's decision by Exhibit

---

[9] A GAF of fifty or below indicates serious symptoms, or any "serious impairment" in social or occupational functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, at 32, 34 (4th ed. 2000). A GAF of forty-one to fifty demonstrates a "serious impairment" to perform work. Id.

number only and does not mention Dr. Bryer's opinion and 50 GAF score, despite the ALJ's specific mention of a 62 to 70 GAF assessment on July 5, 2007, five months prior to Plaintiff's evaluation by Dr. Bryer.  (A.R. 334.)  In addition, the ALJ's decision fails to mention the contradictory findings contained in Dr. Bryer's records.

Having considered the arguments of both parties, we find insufficient evidence in support of the ALJ's determination regarding Plaintiff's mental impairment.  The ALJ discussed Plaintiff's mental impairment at only one place in her decision, when she determined that her mental impairment was not severe.  Based on our review of the record, we conclude that the ALJ failed to properly explain why she disregarded the 50 GAF score or the opinions assessed by Dr. Bryer.  This finding appears to be inconsistent with the ALJ's determination that Plaintiff's mental examination was not a severe impairment.  (A.R. 14.)  Other evidence pertinent to Plaintiff's mental impairment includes Plaintiff's hearing testimony.  Although the ALJ generally credited Plaintiff's testimony, it does not appear that she specifically considered her testimony regarding her mental impairment and continuing treatment because that portion of her testimony is not explicitly addressed in the decision.  (A.R. 12, 21-22.)

In reaching a decision, the ALJ must consider all of the relevant evidence in the record.  Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984); Cotter v. Harris, 642 F. 2d 700, 705 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407, (3d Cir. 1979); Gober v. Mathews, 574 F.2d 772, 776 (3d Cir. 1978).  Furthermore, to guard against an abuse of discretion by the Commissioner, the ALJ is required to provide some indication of the evidence which was rejected in arriving at the decision and the reasons therefore, so that a reviewing court can determine whether probative evidence was properly credited or simply ignored.  See Cotter, at

705.  The ALJ failed to mention and explain her position on Plaintiff's assigned GAF score of 50

even though she included other GAF scores in her decision.  We conclude that by ignoring this

evidence, the ALJ acted in clear dereliction of her duty to explicitly weigh such evidence.[10]  See

Dobrowolsky, 606 F.2d at 407; see also Sykes v. Apfel, 228 F.3d 259, 266 (3d Cir. 2000).  In

fact, "courts in the Eastern District of Pennsylvania have repeatedly noted that GAF scores

constitute medical evidence that is accepted and relied on by physicians, and that where an ALJ

fails to explain why the scores have been discounted, a remand is necessary."[11]  West v. Astrue,

No. 09-2650, 2010 U.S. Dist. LEXIS 40448, at *18 (E.D. Pa. Apr. 26, 2010); Glover v. Astrue,

No. 07-2601, 2008 WL 517229, at *1 (E.D. Pa. Feb. 27, 2008)(citing Robleto v. Barnhart, No.

05-4843, 2006 WL 2818431, at *8 (E.D. Pa. Sept. 28, 2006); Dougherty v. Barnhart, No.

---

[10]     This Court "cannot conduct de novo review of the Commissioner's decision or re-weigh the
evidence of record."  Schwartz v. Halter, 134 F.Supp. 2d 640, 647 (E.D. Pa. 2001)(citing Palmer v. Apfel, 995
F.Supp. 549, 552 (E.D. Pa. 1998)).

[11]     Of particular importance and relevance to this matter, we note that the Honorable Michael M.
Baylson reviewed several cases in this district which discuss the issue of whether remand is required where an ALJ
fails to address or examine GAF scores of 50 or below.  West v. Astrue, No. 09-2650, 2010 U.S. Dist. LEXIS
40448, at *18 (E.D. Pa. Apr. 26, 2010).  Having reviewed these cases, Judge Baylson concluded as follows:

> Because a GAF score constitutes medical evidence accepted and relied upon by
> a medical source, it should be addressed by an ALJ in making a determination
> regarding a claimant's disability.  Clearly, the five GAF scores of 50 or below
> received by Plaintiff indicate serious symptoms.  Yet, after examining the record
> and the GAF scores contained therein, the Court finds that while the ALJ
> provided an explanation regarding the evidence upon which she relied, the ALJ
> failed to disclose any reasons for not considering the five GAF scores of 50 or
> below received by Plaintiff.  For this reason, the Court is unable to conclude that
> the ALJ's disability determination is supported by substantial evidence, and
> remands the case for consideration of plaintiff's GAF scores in conjunction with
> the other mental health evidence in the record and their effect on her RFC.  The
> Court makes clear that it does not find that the GAF scores in question
> necessarily indicate that Plaintiff is "disabled" under the Act.  Instead, the Court
> merely requires that the ALJ, on remand, address the multiple GAF scores
> received by Plaintiff of 50 or below.

West, 2010 U.S. Dist. LEXIS 40448, at *18.

9

05-5383, 2006 WL 2433792, at *9-10 (E.D. Pa. Aug. 21, 2006); <u>Colon v. Barnhart</u>, 424 F.

Supp.2d 805, 813-14 (E.D. Pa. 2006); <u>Span ex rel. R.C. v. Barnhart</u>, No. 02-7399, 2004 WL

1535768, at *6 (E.D. Pa. May 21, 2004)(concluding that it is not sufficient for an ALJ to mention

GAF scores without adequately explaining how or why they were discounted); <u>Escardille v.</u>

<u>Barnhart</u>, No. 02-2930, 2003 WL 21499999, at *6-7 (E.D. Pa. June 24, 2003).

Where the ALJ has failed to adequately explain in the record her reasons for

rejecting or discrediting evidence, "the reviewing court cannot tell if significant probative

evidence was not credited or simply ignored."  <u>Schwartz</u>, 134 F.Supp. at 648 (citing <u>Cotter</u>, 642

F.Supp. at 705).  The Third Circuit has directed that "[w]here competent evidence supports a

claimant's claims, the ALJ must explicitly weigh the evidence," <u>Dobrowolsky</u>, 606 F.2d at 407;

<u>see</u> <u>also</u> <u>Sykes v. Apfel</u>, 228 F.3d 259, 266 (3d Cir. 2000), and explain a rejection of the

evidence.  <u>See</u> <u>Schaudeck</u>, 181 F.3d at 435 (citing <u>Benton v. Bowen</u>, 820 F.2d 85, 88 (3d Cir.

1987)).

> Unless the Secretary has analyzed all evidence and has sufficiently
> explained the weight he has given to obviously probative exhibits,
> to say that his decision is supported by substantial evidence
> approaches an abdication of the court's 'duty to scrutinize the
> record as a whole to determine whether the conclusions reached are
> rational.'

<u>Id</u>.  That is, meaningful judicial review of the ALJ's decision is not possible where the ALJ has

not sufficiently explained the weight given to all probative evidence.  <u>See</u> 20 C.F.R. §§

404.1527(e), (a)(2).  This Court may not presume to know why the ALJ failed to address the

specific findings and GAF assignment of Dr. Bryer or Plaintiff's testimony concerning her

mental impairment; judicial review is not meaningful when based on such presumptions.[12]

Woodcock v. Barnhart, 2003 WL 1949638, at *6 (E.D. Pa. Apr. 24, 2003).  Remanding the case

for this reason does not reflect anything more than the court's need for such information in

reviewing the ALJ's decision.[13]

### B.   Whether the ALJ's Finding That Plaintiff Did Not Have a Severe Mental Impairment Was Erroneous.

Plaintiff contends that she is entitled to summary judgment because the ALJ's

determination that she did not have a severe mental impairment was erroneous.  Regarding

Plaintiff's mental health as set forth in the Decision, the ALJ stated:

> A diagnosis of major depressive disorder is documented, but the claimant's past treatment was very minimal and she is not in current treatment. (Exhibit 8F, 10F).  Further her GAF of 62 to 70 establishes that she has some difficulty in social and/or occupational functioning but generally functions well. (Exhibit 6F).
>
> . . . .
>
> She takes Effexor. . . She gained 100 pounds in the past year.  She has had no mental health treatment for the past year and a half.

(A.R. 14, 15.)  At the ALJ hearing, Plaintiff testified that her family doctor, Dr. Rosen, prescribes

Effexor for her depression and fibromyalgia.  (A.R. 38.)  Dr. Rosen first prescribed Effexor, then

tried "a few different anti-depressants.  We tried Effexor and something else and went back to

---

[12]     "The court can hypothesize numerous sound reasons that might have informed the ALJ's conclusion on this issue, however our court of appeals does not permit such guesswork in the name of judicial review."  Woodcock v. Barnhart, 2003 WL 1949638, at *6 (E.D.Pa. Apr. 24, 2003).

[13]     In making this recommendation to remand, this Court has considered Gilroy v. Astrue, 351 F. App'x. 714 (3d Cir. 2009), a non-precedential opinion of the United States Court of Appeals for the Third Circuit.  In Gilroy, the Third Circuit, writing only for the benefit of the parties, determined that the ALJ's failure to explicitly reference a one-time GAF score of forty-five by plaintiff's treating psychiatrist was not error because the ALJ made repeated references to observations from his reports.  Id. at 716.  In this matter, however, there are really no other references in the ALJ's decision to the observations of Dr. Bryer.  To the contrary, there is only one reference to his report by its exhibit number.

Effexor."  (Id.)

The ALJ found that the Plaintiff did not have a severe mental impairment. Plaintiff contends that this determination was not supported by substantial evidence.  The ALJ made only one mention of Plaintiff's mental impairment.  The Defendant contends that the ALJ acknowledged that "Plaintiff was diagnosed with a medically determinable impairment, namely, a major depressive disorder" (Def. Br. at 6), and that she "cited to substantial relevant evidence that supported her determination, including Plaintiff's longitudinal treatment history and the medical evidence."  (Def. Br. at 7).  Defendant then explains how an adjudicator determines whether or not someone has a severe mental impairment, and analyzes the record.  (Def. Br. at 7-13).

The Administrative Record contains an April 15, 2006 letter by Dr. Nancy S. Woolf, M.D., stating that she had seen Plaintiff for a total of ten sessions between January 12, 2005 and July 24, 2005, and treated Plaintiff's depression with Effexor, Lexapro, and Cymbalta, but Plaintiff discontinued treatment due to financial concerns.  (A.R. 110.)  At the last session on July 24, 2005, Plaintiff reported decreased depression and anxiety with Cymbalta.  (Id.)  Two years later on December 13, 2007, Dr. Breyer performed a consultative examination and diagnosed Plaintiff with "Major Depression, moderate to severe in intensity, recurrent in nature" and attributed an Axis V Global Assessment of Functioning ("GAF") score of 50 to Plaintiff. (A.R. 367-371.)  Dr. Breyer indicated that Plaintiff had "Marked" restrictions in her ability to understand and remember detailed instructions; carry out detailed instructions; and respond appropriately to work pressures in a usual work setting; and "Moderate" restrictions in her ability to understand and remember short, simple instructions; make judgments on simple work-related

decisions; interact appropriately with co-workers; and respond appropriately to changes in a routine work setting.  (A.R. 373.)  Eleven days later, Mark Masi, the SSA Disability Examiner, stated in a December 24, 2007 Disability Determination Rationale, that:

> The medical evidence in file substantiates that this claimant has a significant mental impairment.  However, the claimant has the mental residual capacity to do simple, unskilled work.  The claimant is 33 years old and has 14 years of education.  She has past work as an administrative assistant for 5 years.
>
> The claimant is able to do such jobs as an egg processor (pharmaceutical), stone setter (jewelry - silver), and eyeglass frames polisher (optical goods).  All of these jobs are physically sedentary, simple and routine in nature, and require little interaction with other people.  Therefore, this claimant is found not [to] be disabled.

(A.R. 44.)   In a Psychiatric Review Technique Form completed on December 24, 2007, the same day as Mark Masi's Disability Determination Rationale, John Gavazzi, Psy.D., ABPP, opined that Plaintiff had  only "Moderate" limitations in maintaining social functioning, and maintaining concentration, persistence, or pace.  (Id. at 385.)

Regarding her depression, Plaintiff testified at the ALJ hearing that she was "not well" in 2007, she checked herself into a mental health center because she felt suicidal, and although hospitalization was recommended, she was not then hospitalized.  (Id. at 38-39.) Plaintiff also indicated on her adult disability report that

> [d]epression and fatigue are my life.  I struggle to get out of bed to use the bathroom, or participate with my family.  [M]y husband and four year old are closed off to me once he is home from work.  I find that I lock myself in my room in hopes of locking out the world.  I just want for my day to end, so I can sleep and forget about my life for a few hours, until I wake in pain in the middle of the night and start over.

(Id. at 124.)  Plaintiff explained that she stopped therapy due to financial reasons and her current physician prescribes medications for her mental impairment.  (Id. at 38, 110.)  However, it has

been recommended that she undergo individual psychotherapy.  (Id. at 338.)  In Newell v.

Comm'r of Social Sec. Admin., 347 F.3d 541 (3d Cir. 2003), the Third Circuit noted that under

SSR 96-7p:

> the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

Id. at 547 (quoting SSR 96-7p (internal quotations omitted)).

In determining whether someone has a severe mental impairment, an adjudicator

examines the overall impact the individual's condition has on her ability to function in four broad

functional areas, namely, episodes of decompensation; activities of daily living ("ADL"); social

functioning; and concentration, persistence, or pace.  20 C.F.R. § 404.1520a(c)(3), (d)(1).

Episodes of decompensation are exacerbations or temporary increases in symptoms or signs

accompanied by a loss of adaptive functioning, and these episodes may be inferred from medical

records showing a significant alteration in medication or documentation of the need for a more

structured psychological support system.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C4.  The

ALJ noted that Plaintiff had a "very minimal" treatment history for her depression (A.R. 14) but

did not expand on this statement or review the evidence in the record regarding Plaintiff's

treatment history.

Plaintiff argues that she did not seek more treatment because of financial reasons

(Pl.'s Br. at 7).  The Defendant argues that Plaintiff failed to show that she did not have access to

free or low-cost medical services, but Social Security Rulings cited by Defendant require that an

inability to afford treatment and lack of access to free or low-cost medical services is considered

when assessing credibility.  However, nothing in the ALJ Decision shows that the ALJ considered Plaintiff's financial reasons for lack of mental health care in assessing her credibility.

As noted in the previous section of this Report and Recommendation, we recommend remanding this case for the ALJ to address the specific findings and GAF assignment of Dr. Bryer and Plaintiff's testimony concerning her mental impairment.  See supra, § III.A. Here, the ALJ failed to consider the opinion of Dr. Breyer, failed to consider Plaintiff's explanation for her lack of mental health treatment (Pl. Br. at 7), and failed to evaluate the Plaintiff's testimony regarding her mental limitations.  (Pl. Br. at 6.)  This matter must be remanded for the ALJ to revisit her analysis of Plaintiff's mental limitations after consideration of Dr. Breyer's opinion, Plaintiff's explanation for her lack of mental health treatment and Plaintiff's testimony regarding her mental limitations.

**C.      Whether the ALJ Failed to Properly Consider Plaintiff's Impairments in Combination.**

Plaintiff contends that the ALJ erred in providing only a conclusory statement that she does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  In her decision, the ALJ stated:

> The back problems and degenerative disc disease do not meet or equal the requirements of section 1.04.  There is insufficient evidence of nerve root compression characterized by neuroanatomic distribution of pain, spinal range of motion, and muscle weakness accompanied by sensory reflex loss and positive straight leg raising test.  There is no evidence of spinal arachnoiditis manifested by severe burning or painful dysesthesia, and the need to change position or posture more than once every two hours.  There is insufficient evidence of spinal stenosis, resulting in psuedoclaudication established by medically acceptable imaging and manifested by chronic nonradicular weakness, and resulting in the inability to ambulate effectively.  Also, fibromyalgia does not alone or in combination with other impairments meet or equal the requirements of a Listing. Finally, the combined affects of obesity and each of the other diagnosed

<u>impairments was considered and determined not to satisfy the Listing</u>
<u>requirements</u>.

(A.R. 14)(emphasis added).  In formulating her RFC determination, the ALJ performed a short

review of Plaintiff's other impairments.  She specifically stated:

> There are no records covering the period on or about the alleged onset date of March 15, 2002.  <u>In terms of her alleged back pain, fibromyalgia, and obesity, the</u> <u>existing records fail to establish the presence of a disabling impairment or</u> <u>combination of impairments</u>.  Early treatment records from treating source Michael Rosen, M.D. discuss recommended conservative treatment with lumbar facet joint blocks, medication, and physical therapy for pain multifaceted in origin secondary to low back osteoarthritis and fibromyalgia (Exhibit 2F).  More recent records from rheumatologist Jennifer Kwan-Morley, M.D. discuss continued pain and fatigue related to fibromyalgia and treatment with various medications, but these records provide no indication that limitations posed by the claimant's condition would preclude work performed at the established residual functional capacity (Exhibit 15F).  Similarly, records from the claimant's current primary care physician at West Chester Family Practice show no findings that would preclude work performed at the established residual functional capacity (Exhibit 18F).

(A.R. 15.)  Plaintiff contends that although the ALJ specifically discusses Listing 1.04, she did

not provide more than a conclusory statement regarding whether or not Plaintiff's fibromyalgia

and obesity impairments meet or equal a listing, and did not indicate whether or not she

considered Plaintiff's non-severe impairments.

Social security's regulations require the Commissioner to consider multiple

impairments in combination.  20 C.F.R. Section 404.1526(a) states: "If you have more than one

impairment, and none of them meets or equals a listed impairment, we will review the symptoms,

signs and laboratory findings about your impairments to determine whether the combination of

your impairments is medically equal to any listed impairment."  The ALJ must consider the

combined effect of multiple impairments, regardless of their severity.  <u>Burnett v. Commissioner</u>

16

of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Thus, Plaintiff contends that the ALJ's

alleged failure to properly consider her fibromyalgia and obesity is erroneous.

        The Defendant responds with the following argument:

> The ALJ determined that Plaintiff's impairment and combination of impairments
> had not met or medically equalled the severity of requirements of an impairment
> (Tr. 12, 14).  As discussed above, it is evident that the ALJ considered the
> combined effects of Plaintiff's impairments when he assessed her functioning.
> Plaintiff contends that the ALJ failed to properly consider, for example, her
> fibromyalgia, obesity and non-severe impairments (such as her pulmonic stenosis)
> (Pl.'s Br. at 9).  But the ALJ considered these impairments when she assessed, for
> example, Plaintiff's muscle strength and ability to ambulate because her
> impairments and their effects were inextricably intertwined.  Besides this, Plaintiff
> has failed to meet her Sanders burden because she provides no explanation of how
> the ALJ's purported failure changed the ALJ's decision (Pl.'s Br. at 8-9).

Def.'s Br. at 23-24.

        Although it appears that Defendant may be correct that the ALJ considered the

combined effects of Plaintiff's impairments when he assessed her functioning, due to this Court's

recommended remand for consideration of Dr. Breyer's opinion and Plaintiff's mental

impairment, the ALJ should also revisit her decision concerning Plaintiff's impairments in

combination.  We therefore recommend that the case be remanded to the Commissioner for

additional proceedings, taking into consideration the Plaintiff's impairments of fibromyalgia,

obesity, her non-severe impairments and her mental impairments and the combined effect of all

of these impairments.

        **D.**    **Whether the ALJ's Credibility Finding Was Erroneous**.

        Credibility determinations as to a claimant's testimony regarding her limitations

are reserved for the ALJ.  Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).  Because an

ALJ is charged with observing a witness's demeanor, his findings on credibility must be

accorded great weight and deference.  See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003).

A claimant's allegations alone will not establish that she is disabled.  20 C.F.R. § 416.929(a).

Subjective complaints must be substantiated by medical evidence, and a claimant "must show

that [s]he has a condition which reasonably could be expected to produce the alleged symptoms

that are the cause of his inability to work."  Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir.

1992), cert. denied, 507 U.S. 924 (1993).  While the ALJ must seriously consider a claimant's

subjective complaints, it is within the ALJ's discretion to weigh such complaints against the

medical evidence and accept or reject them.  See 20 C.F.R. § 416.929 (explaining how the

Commissioner evaluates a claimant's symptoms, including pain).

        The ALJ found that, "the claimant's medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however, the claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are not credible to

the extent they are inconsistent with the above residual functional capacity assessment."  (A.R.

15.)  The ALJ specifically stated,

> The claimant testified to the following.  She is 34 years old.  She completed two
> years of college.  She volunteers as a classroom aide once or twice per week,
> working 15 minutes to an hour at a time.  She claims that she cannot work
> because of poor family medical history, difficulty doing basic activities of daily
> living and heart problems.  She has difficulty lifting her arms and has left side
> pain.  Her hands burn and tingle, and she has pain all over her body.  She can do
> chores but only in short spurts.  She said that she can stand as long as it takes to
> load a dishwasher, walk about five minutes, sit 15 minutes, and lift a gallon of
> milk.  She takes Percocet, Ibuprofen, Ambien, Effexor, Atenolol, Zyrtec,
> Singulair, and medication for hives.  She gained 100 pounds  in the past year.  She
> has had no mental health treatment for the past year and a half.  She sees a
> cardiologist twice a year, an allergist monthly, a pain doctor monthly and a
> rheumatologist every three months.  She feels worse now than before because she
> has pain all of the time and her pain is worse with activities.  However, she drives
> a car, helps her spouse with dinner, drives her daughter to and from school, and

does chores slowly and with some pain.  The claimant maintained that she cannot work because she would miss too much time, and that she cannot commit because she does not know how she will feel from day to day.  She testified that she wants another child but is fearful of taking care of the child.  She has one child now, age six.

I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Per the claimant's testimony, she was pregnant in March 2002 when she stopped working. I have considered her testimony that she takes care of and raises a six year old child; significantly, her child raising years comprise the period of alleged disability. It is also significant that she can do household chores, albeit with rest breaks.

(A.R. 15.) SSR 96-7p states that it is not sufficient for the adjudicator to make a single, conclusory statement that "the individuals allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the ALJ to recite the factors that are described in the regulations for evaluating symptoms.  SSR 96-7p requires that the decision contain "specific reasons" for the credibility finding, which is supported by the evidence in the case record, and "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."

Since the ALJ indicated that Plaintiff's statements were not "entirely" credible, the ALJ apparently rejected some part of Plaintiff's testimony and credited other parts of it but failed to delineate which, if any, specific limitations and testimony she credited and which she did not credit.  It does not appear that the ALJ specifically considered Plaintiff's testimony regarding her mental impairment and continuing treatment because that portion of her testimony

is not explicitly addressed in the decision.  (A.R. 12, 21-22.)   On remand, the ALJ should revisit

her credibility analysis after reconsidering Dr. Bryer's opinion and Plaintiff's mental impairment,

and if the ALJ should determine that Plaintiff does not qualify for disability as a result of her

impairment or combination of impairments, the ALJ must articulate the weight applied to the

evidence and the reasons for rejecting Plaintiff's claim of disability.

      **E.**      **Whether the ALJ Erroneously Relied Upon an Incomplete Hypothetical Question.**

      Plaintiff also argues that the ALJ posed a flawed hypothetical question to the

vocational expert.  Because additional functional limitations may be assessed by the ALJ after a

reconsideration of Dr. Breyer's opinion, Plaintiff's testimony regarding her mental impairments

and continuing treatment and the ALJ's credibility findings, this Court agrees.

      As discussed above, the ALJ found that through December 31, 2007, Plaintiff had

the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a),

except she required a sit/stand option and low stress simple work.  The ALJ concluded that

although Plaintiff was unable to perform any past relevant work, she was still functionally

capable of making a vocational adjustment to work that existed in significant numbers in the

national economy due to her age, education, work experience, and residual functional capacity.

The ALJ found that transferability of job skills was not an issue because the Medical-Vocational

Rules as a framework supported a finding of "not disabled" whether or not Plaintiff had

transferable job skills.  Thus, the ALJ found Plaintiff was not disabled at any time from March

15, 2002, her alleged onset date, through December 31, 2007, the date she was last insured.

(A.R. 13-17.)   To determine whether Plaintiff was capable of performing other substantial

gainful activity, the ALJ relied upon the testimony of a vocational expert.  Testimony of a

vocational expert constitutes substantial evidence for purposes of judicial review where a

hypothetical question considers all of a claimant's impairments which are supported by the

medical record.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  Hypothetical

questions need only include factors that are supported by objective medical evidence contained in

the record.  Id. at 1271.  It is not necessary for the ALJ to include facts that are supported by a

claimant's subjective testimony only.  Id.

       Here, the ALJ posed a hypothetical question to the vocational expert to see if any

work existed in the national economy that a claimant such as Plaintiff could perform given her

impairments.  The ALJ asked the vocational expert to assume a claimant who was able to do the

following:

> Let's assume an individual of 27, that's the onset date, with more than a high
> school education and the claimant's past work and skills.  Let's assume she's
> limited to sedentary work with a sit/stand option provided the work is simple,
> one/two step, low stress. Could she return to any of her past work?

(A.R. 41.)  The VE replied that none of the claimant's past work was simple, but listed examples

of jobs she could do such as assembler and hand packer.  (Id.)  The ALJ added a second

hypothetical with the addition of "limited fine gripping with her fingers" and a third hypothetical

including an inability to complete a work week.  (Id.)  The VE responded that the limitations of

limited fine gripping with her fingers and inability to complete a work week would rule out the

Plaintiff's occupational base.  (Id. at 42.)

       Because this Court finds that the ALJ did not properly analyze the medical

evidence with respect to Plaintiff's mental limitations or Plaintiff's testimony concerning

additional alleged functional limitations, this Court must conclude that the limitations enumerated in the hypothetical may not be a complete list.  As a result, we conclude that, under these circumstances, the testimony of the vocational expert cannot provide substantial evidence to support the ALJ's determination that a significant number of jobs exists in the national economy which Plaintiff could perform.

Therefore, upon remand, should the ALJ find that the additional limitations to which Plaintiff testified are, in fact, credible, the ALJ should hold a supplemental hearing in order to receive the testimony of a vocational expert in an effort to determine whether a significant number of jobs exists in the national economy which Plaintiff could perform.

## VI.  CONCLUSION.

Based on the record before us, we cannot find substantial evidence in support of the ALJ's decision that Plaintiff is not disabled.  On remand, the ALJ should reconsider Dr. Bryer's opinion and, if necessary, retain a psychiatric expert to adequately evaluate Plaintiff's medical status.   If the ALJ should determine that Plaintiff does not qualify for disability as a result of her impairment or combination of impairments, the ALJ must articulate the weight applied to the evidence and the reasons for rejecting Plaintiff's claim of disability.[14]  On remand, the ALJ should also, if necessary, revisit her credibility findings and formulate a hypothetical to a VE.[15]  Finally, Plaintiff should remain cognizant that the ultimate burden of proving disability

---

[14]      The Third Circuit requires the ALJ to set forth the reasons for his decision.  Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000)(citing Cotter, 642 F.2d at 704-05).

[15]      The Third Circuit has consistently held that because the VE provides opinion as to the claimant's residual functional capacity, the hypotheticals posed to a VE must accurately identify "all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)(citing Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984) and Wallace v. Sec'y, 722 F.2d 1150, 1155 (3d Cir. 1983)(stating the expert

rests with her.

Therefore, I make the following:

## RECOMMENDATION

AND NOW, this      16th           day of December, 2011, it is RESPECTFULLY RECOMMENDED that the Plaintiff's motion for summary judgment should be GRANTED in part, and the matter should be REMANDED to the Commissioner in accordance with the fourth sentence of 42 U.S.C. § 405(g).


BY THE COURT:


*/s/ Henry S. Perkin*
HENRY S. PERKIN,
United States Magistrate Judge

---

must have evaluated claimant's particular impairments as contained in the record)).